

This document contains some
pages that are of poor quality
at the time of imaging.

TEXAS COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

§

§

EXPARTE'                                              §

Isaias Palacios                                       §          Cause Nos. CR36475 & CR36477

§

82,566-05

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 09 2015

Abel Acosta, Clerk

## WRIT OF MANDAMUS

To The Honorable Judge of Said Court:

Comes now, Isaias Palacios, petitioner in the above styled and numbered cause of action and files this original Application For Writ of Mandamus, pursuant to Art. 11.07 Section 3(c) of the Texas Code of Criminal Procedure and would respectfully show the court the following:

I.

There is no known practice of barring non-capital state writ applicant's from filing a supplemental application. As indicated above nothing in art. 11.07 resticts an applicant from filing a supplemental argument. Tex. Rules of Appellate procedures, Rule 73 applies to "postconviction applications for writ of heabeas corpus" and does not address supplemental applications. Therefore, pursuant to T.C.C.P. art. 11.07 §3(c) petitioner moves this Honorable Court of Criminal Appeals to grant his mandamus because there is substantial controversy as material facts which will entitle petitioner to relief as a matter of law.

II.

Petitioner filed his original writ of habeas corpus 11.07, in the 142nd Judicial District Court, Midland County, Texas on or about the 8/11/2014. Petitioner,

Page 1

filed a supplemental argument in support; thereof, supplementing the original argument found in ground (4) four, which the prosecution withheld exculpatory as well as impeachment evidence on or about the 8/22/2014. See exhibit (a) supplemental argument, which the trial court had a duty to rule on within 35 days which has expired as of this date. Therefore, pursuant to art. 11.07 §3(c), failure of the court to act within the allowed 35 days shall constitute a forwarding of the petitioner's supplemental argument to the Texas Court of Criminal Appeals. However, petitioner's case has been before the court for _6_ months and _5_ days and he has no other adequate remedy available.

### III.

The act sought to be compelled is ministerial, not discretionary in nature. T.C.C.P. art. 11.07 §3(c) requires respondent to immediately transmit to the Court of Criminal Appeals a copy of the 11.07 habeas corpus "supplemental argument," any answers filed, and a certificate reciting the date upon which that filing was made, if the convicting court decides that there are no issues to be resolved. At this time there has been no copy of the supplemental 11.07 argument, answers filed, nor a certificate reciting the date upon which that filing was transmitted to the Court of Criminal Appeals. However, had such documents been transmitted to the Court of Criminal Appeals by Respondent as required by statute, petitioner would have received notice from the court.

### IV.

In order to obtain mandamus relief in a criminal matter, a petitioner must meet a two-prong test. First, petitioner must show that he has no other adequate remedy to seek redress for the alleged error by the trial court. See Board of Pardons and Paroles v. Court of Appeals, 910 S.W. 2d 481, 483 (Tex. Crim. App. 1995). There is no other remedies in petitioner's case for his supplemental argument to be heard

Page 2

by the Court of Crinial Appeals, or federal court's because the trial court is holding petitioner's supplemental 11.07, argument and has not made a ruling. Secondly, the act petitioner seeks to compel must be ministerial in nature under art. 11.07, it is ministerial for the trial court to rule on the 11.07 supplemental argument, so that the Court of Criminal Appeals can consider his claims. See Hilbig v. McDonald, 877 S.W. 2d 469. Moreover, a theoretically discretionary act my nontheless become ministerial in application if the facts and circumstances of given case lead to, but one rational course of action. See Braxton v. Dunn, 803 S.W. 2d 318, 320. The Court of Criminal Appeals also recognizes a clear right to the relief sought as being functional equivalent of a ministeral act. Holmes v. Third Court of Appeals, No. 71, 764 N. 4 slip. op at 5, 1994 WL 135476, Tex. Crim. App. Apirl 20, 1994; Whitsitt v. Ramsay, 719 S.W. 2d 333.

## V.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, petitioner respectfully request a finding that the Respondent did not transmit documents to the Court of Criminal Appeals within a reasonable time after the date they were requested and that petitioner brought this litigation in good faith and has substantially prevailed. Petitioner prays for an order directing Respondent to transmitt a copy of the 11.07 supplemental argument of habeas corpus, any answers filed, and a certificate reciting the date upon which that finding was made to the Court of Criminal Appeals as directed in Article 11.07 Section 3(c) of the Texas Code of Criminal Procedures and all relief as requested, which is set out in exhibit (a).

Respectfully Submitted

*Isaias Palacios*　　2/3/2015

Isaias Palacios
1675 South FM 3525
Colorado City, Texas
79512

Page 3

## CERTIFICATE OF SERVICE

I Isaias Palacios, hereby certify that a true copy of the above Application For Writ of Mandamus was served on the Clerk of the Texas Court of Criminal Appeals in Austin, Texas on _3_ day of _February_ ,2015, by placing a copy in the U.S. Mail at the Wallace Unit.

_Isaias Z. Palacios_

page 4

(EXHIBIT 1-a)

CAUSE NOS. CR 36-475 & CR 36-477

FILED

2014 AUG 22 PM 12:42

ROSS BUSH DISTRICT CLERK

CLARISSA GRANADO

|                    |   |                              |
|--------------------|---|------------------------------|
|                    | § |                              |
|                    | § |                              |
| EXparte            | § | IN THE DISTRICT COURT FOR    |
| Isaias Palacios    | § | 142ND JUDICIAL DISTRICT      |
| Pro'Se Applicant   | § | MIDLAND COUNTY, TEXAS        |
|                    | § |                              |

### SUPPLEMNETAL 11.07 APPLICATION WITH BRIEF IN SUPPORT

Applicant, Isaias Palacios asks this Honorable Court to grant his "original application" challenging his conviction in CR 36-475 and CR 36-477, or in the alternative grant relief based on his "supplemental application" by finding the prosecution withheld favorable evidence that was material to applicant's defense. Applicant requests a hearing on said matter. Applicant stands on the arguments presented in his "supplemental application" as well as all previous arguments made in his "original application."

### ARGUMENT IN SUPPORT OF SUPPLEMENTAL APPLICATION
### USE OF SUPPLEMENTAL APPLICATION.

There is no known practice of barring Non-Capital state writ applications from filing a supplemental application. As indicated above nothing in Article 11.07 restricts an applicant from filing a supplement. Rule 73 of the Texas Rules of Appellate Procedure applies to "Postconviction Applications for the Writ of Habeas Corpus" and does not address supplemental applications. Rule 68.10 of the Texas Rules of Appellate Procedure allows a party to file a supplemental petition for discretionary review "at any time when justice requires."

Page 1

## STATEMENT OF THE FACTS

The indictment forming the basis of the prosecution of the applicant was centered on a series of events, which occurred in and around an satablishment in Midland known as Riley's Bar and Grill. (RR-Vol. 3, PP. 39-40, 101, 144-145, 196). On May 25, 2009, Palacios was a customer at Riley's Bar, enjoying some drinks with his common-law wife and her mother. (RR-Vol. 5, PP. 83, 87-89).

According to the testimony by Detective Bill Anderson, there was a video showing several male subjects scuffling with Palacios. He states, (someone)-he viewed the video, and knew of its existence, did not try to down load it, nor contact someone who could, or retrieve it. Next he did the unthinkable, he did not mention this video and its viewing in his investigation report. (RR-Vol. 5, PP. 6-14).

Palacios' mother-in-law testified that Palacios, Indian Joe, and herself were at a table; Palacios and she were playing around when Jamie Mendez **BLIND SIDED** [emphasis added] Palacios from the back, Palacios never saw it coming. Mendez and two other guys pulled Palacios around the end of the pool table, and just kicking and whooping him. They beat Palacios in two different points in the bar before taking him outside. (RR-Vol. 5, PP. 31-42).

Jamie Mendez stated, "I remember putting him down." (RR-Vol. 5, p. 14-25). Steven Taft, another patron in the bar, helped assault applicant or restrain him being a former Marine and being trained in Police Apprehension restraining techiques. Taft stated, "After applicant got up, and he went to the SUV I remember the look on his face, like not emotional at all, it was a blank look. And I remember that clear as day in my mind." (RR-Vol. 3 pp. 228-230).

Cristina Franco described the incident as more of a beating than someone escorting Palacios out of the bar. She states they held Palacios down while kicking him

Pabe 2

and when they let him up; he walked away. He was just weird, if I had gotten a beating like that (RR-Vol. 3, pp. 156, 157 1-3).

When Palacios entered his SUV , the testimony showed that he drove his SUV in such a manner that he ran into other motorcycles and vehicles, subsequently pinning a woman between a truck and a motorcycle. She was able to run away after Palacios backed up (RR-Vol. 4, PP. 14-126, 78-84).

*Pete Payan testified that, somebody hit Palacios, he fell to the ground, so many "PEOPLE" [emphasis added] involved in it. (RR-Vol. 4, P. 11; 8-12); there was a bunch of "PEOPLE" on top of him, kicking him, just hitting him. (RR-Vol. 4, P. 12; 18-20). There was a bunch of "PEOPLE" around this guy. (RR-Vol. 4, P. 13; 1-4). A woman pushed me out of the way??? (RR-Vol. 4, P. 15; 1-5, 18-25). **NO WOMAN** was struck we both got out the way (RR-Vol. 4, P. 16; 9-17) . He ran into one motorcycle then another truck, or another motorcycle **BUT DIDN'T** hit any woman. (RR-Vol. 4, P. 16; 1-4).

Palacios' wife entered the SUV by diving through a window and the two left Riley's in their vehicle traveling at a high rate of speed. (RR-Vol. 3, P. 122; Vol. 4, P. 33). As applicant was leaving Riley's Bar, Midland Police Officer, Richard Lewis was arriving in response to a report of a disturbance at Riley's Bar. (RR-Vol. 4, PP. 178-179) Officer Lewis instructed applicant to stop his vehicle in the bar's parking lot, while at the same time observing numerous people pointing at Palacios' vehicle (RR-Vol. 4, PP. 179-180). Instead of stopping, Palacios proceeded away from Riley's where upon officer Lewis activated his emergency equipment, hitting his siren a couple of times. (RR-Vol. 4, PP. 181-182). Applicant continued to drive from Officer Lewis traveling some ten to fifteen miles over the posted speed limit, finally stopping in the front yard of a residence. (RR-Vol. 4, PP. 182-183).

Page 3

At the time of applicant's arrest, Officer Lewis also testified that he observed several marks on applicant's face and chest, that applicant repeatedly stated, "They beat me up, they beat me up." (RR-Vol. 4, P. 184). At that time Officer Lewis arrested Palacios for evading arrest and aggravated assault. (RR-Vol. 4, P. 191).

At trial applicant presented evidence from various witnesses to the effect that he was injured during the altercation at Riley's Bar before he entered his vehicle and drove it. Applicant's wife, Shanna Parker, testified that she had left Riley's to get some money, and upon her return saw three men swinging applicant and throwing him out of the bar. (RR-Vol. 5, PP. 97-101). According to Ms. Parker, these men appeared to be trying to hurt applicant. (RR-Vol. 5, P. 101). More specifically, Ms. Parker testified that she saw these men hitting, kicking, and shoving applicant to the ground. (RR-Vol. 5, PP. 105-114).

SUPPLEMENTAL GROUND FOR RELIEF: The prosecution withheld exculpatory as well as impeachment evidence that was material to the applicant's defense theory, and therefore, violated applicant's 5th and 14th Amendment Rights to the United States Constitution.

## ARGUMENTS AND AUTHORITIES

When an applicant claims that the prosecution suppressed exculpatory evidence and thereby, violated his right to due process, the applicant must satisfy a three-pronged test: First, applicant must show that the state failed to disclose evidence, regardless of the prosecution's good or bad faith. Second, applicant must show that the withheld evidence is favorable to him. And finally, applicant must show that the evidence is material that is, there is a reasonable probability that had the evidence been diclosed, the outcome of the trial would have been different. See Exparte Richardson, 70 S.W. 3d at 870.

The UNITED STATES SUPREME COURT has consistently held that a suppression or negligence of a prosecutor to learn of any evidence known to others acting on the

Page 4

government's behalf is a due process violation under Brady standard. **Standard for review:** In Strickler v. Greene, 119 S.Ct. 1936, 1948 (1999). In Brady, this court held "that the suppression by the prosecution of evidence favorable to an accused upon request violated due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of prosecution." Id. at 87, 83 S.Ct. 1194. The court has since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, United States v. Agurs, 96 S.Ct. 2392 (1976). And that duty encompasses impeachment evidence as well as exculpatory evidence. United States v. Brady, 105 S.Ct. 3375 (1985)

Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." Id. at 682, 105 S.Ct. 3375; see also Kyles v. Whitley, 115 S.Ct. 1555 (1995). Moreover, the rule encompasses evidence "known only to police investigators and not the prosecutor." Id. at 438, 115 S.Ct. 1555. In order to comply with Brady, therefore, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." Kyles at 437, 115 S.Ct. 1555.

Ms. Thurmond, the prosecutor for the state, requested a hearing outside the presence of the jury on March 10, 2011, to preface her remarks about Detective Bill Anderson, who was the lead detective on this case. Ms. Thurmond, states that a week or two before trial that Detective Anderson, made her aware that Riley's had a camera system inside the bar, and that at one point there was a recording of the incident in the bar of May 25, 2009. Anderson, told her that he wasn't able to download the recording of the incident, but was able to view the video one time. Ms. Thurmond stated that Anderson told her that he didn't seize the system. (RR-Vol. 5, P. 6, 1-8). Ms. Thurmond, admitted that she failed to disclose to the

Page 5

defense that at one time a video existed. However, she stated, that she never saw the video because it was never downloaded, or put into evidence by MPD, she admitted that she failed to disclose to the defense prior to trial the existence of the video, or that at one time a video of the evidence existed. Ms. Thurmond, stated on record that she just made the defense aware of the evidence this morning, and further stated, that she's making the court aware of it as well on the 3rd day of trial and 2 years after the incident. (RR-Vol. 5, PP. 6,7, 19-25).

Therefore, if Detective Bill Anderson, had retrieved the video tape of the fight, then the jury and not the detective would have had the chance to determine who the actual victim was in this case. Therefore, by refusing to try and retrieve the video, Detective Anderson not only deprived applicant of a fair trial; he placed an undue burden on the prosecution in this case. What's on the video is anyone's guess, but we do know for a fact that Detective Anderson saw someone scuffling with some men (RR-Vol. 5, P. 9, 18-25) However, he chose not to take the video equipment because he did not want to leave the bar without it in case something happened... (RR-Vol. 5, P. 13, 7-17). It seems that Detective Anderson, had failed to realize that something had already happened? Later during questioning Detective Anderson was asked, "If there was a murder, would you have taken the video?" He stated yes! (RR-Vol. 6, PP. 25, 26/23-25/1-3).

Why would Detective Anderson, take the video from one crime scene, but not take it from another crime scene? However, then intentionally keep it out of his report, but 2 years later at the last possible minute for him, finds it important to disclose his information to the D.A. (RR-Vol. 5, P. 13, 18-25). Anderson's actions could possibly indicate fraud because the facts of the matter is that the thoroughness of his investigation; depended upon his actions while looking into the evidence and

statements in this case. Even though, Anderson says the video from Riley's Bar was of low quality, it was still evidence and did exist and could have been shown at the trial in chief had Anderson correctly done his job and seized the equipment (RR-Vol. 6, 25, 13-15). Detective Anderson, admitted that he knew the video was evidence in applicant's case, but yet, relied only on witness statements rather than to disclose it in his report;therefore, denying the prosecution, applicant, and his defense team access to the exculpatory evidence (RR-Vol. 6, P. 26, 15-25). Thereby, applicant has met the first prong of Brady, by clearly showing that the state failed to disclose evidence in his case.

However, this was evidence that ~~should~~ should have been immediately disclosed by Anderson because of its probative value, it could have possibly been used as impeachment evidence due to conflicting testimony at trial, such as Jamie Mendez, (RR-Vol. 3, PP. 198, 199) and applicant's mother-in-law, Ms. Parker, (RR-Vol. 5, PP. 32-40). Therefore, when probative force of evidence depends on circumstances under which it was obtained, and those circumstances raise possibility of fraud, which was an indication of conscientious police work will enhance probative force, but slovenly police work will diminish it for purposes of determining whether non-disclosed evidence of sloppiness of police investigation is material issue as required for Brady violation. See Kyles v. Whitley, 115 S.Ct. 1555 (1995); also see Brady v. Maryland, 83 S.Ct. 1994 supra.

By clear and convincing evidence it has been shown that a tape did exist; it was kept from the defense by a member of the prosection's team, and that the prosection had knowledge of it (RR-Vol. 5, P. 6, 1-20). The exculpatory evidence, the video in question had some value as mitigating and impeachment evidence had it been disclosed to the defense due to multiple conflicting witnesses testimonies

Page 7

during applicant's trial about what took place at Riley's Bar. Therefore, Detective Anderson's assumption to rely on the truth and accuracy of witness statements was error and;therefore, not to disclose this exculpatory. favorable, and material evidence denied applicant of a fair trial and that within itself was harm (RR-Vol. 6, P. 26, 15-25). Thereby, meeting the second prong of Brady, as applicant has shown that the withheld evidence was favorable to him for mitigating and impeachment purposes.

In conclusion: Evidence which the government has failed to disclose to a defendant will satisfy the "materiality" test of Brady. Therefore, the question is not whether a defendant would more than not have received a different verdict with the evidence, but whether in its absence the defendant received a "fair trial." However, what should be understood here is, that a trial resulting in a verdict worthy of confidence, "reasonable probability" of a different result is accordingly shown when the government's evidence suppression undermines confidence in the outcome of the trial. See Kyles v. Whitly 115 S.Ct. 1556 (1995); United States v. Bagly 473 U.S. 667, 680 (1985); United States v. Agurs, 427 U.S. 97, 107 (1976); Brady v. Maryland, 373 U.S. 83 1963); and Exparte Mowbray, 943 S.W. 2d 461, 466 (Tex. Cr. App. 1996).

However, it is clear from the record that Detective Bill Anderson's actions completely undermined confidence in the outcome of applicant's trial in chief, when he failed to disclose and make available for inspection material, exculpatory evidence, (video tape) to the prosecution and to applicant and his defense team. This disclosure would; therefore, have raised an opportunity for applicant to attack the thoroughness and good faith of the investigation, and would also have allowed

Page 8

applicant the oppurtunity to question the probative value of the video tape, which should have been crucial physical evidence in the trial in chief because Detective Anderson, failed to disclose the video, but was allowed to testify to its contents at trial (RR-Vol. 5, PP. 6-14). See Kyles v. Whitley, 115 S.Ct. 1555 (1995); where the defendant was not given the opportunity to question the probative value of physical evidence in his case.

Therefore, however long the prosecution knew about the tape was irrelevent, the fact that the prosecution, and members of their team knew affected applicant's trial and the outcome of his trial was tainted by this failure of disclosure. Thereby, applicant has clearly met the third and final prong of Brady, by showing that the suppression of evidence in his case undermined confidence in the outcome of his trial. Exparte Richardson, 70 S.W. 3d at 870; also see Brady v. Maryland, 373 U.S. 83 (1963).

### PRAYER

WHEREFORE, PREMIS CONSIDERED, applicant respectfully request that this Most Honorable Court consider the ground in this supplemental application in relation to ground 4 and the other grounds detailed in his original application filed on August 11, 2014, and applicant prays that this court grant him relief requested here and in his original prayer.

Page 9

(EXHIBIT 1-b)

## COURT OF CRIMINAL APPEALS OF TEXAS
## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

### INSTRUCTIONS

1. You must use the complete form, which begins on the following page, to file an application for a writ of habeas corpus seeking relief from a final felony conviction under Article 11.07 of the Code of Criminal Procedure. (This form is not for death-penalty cases, probated sentences which have not been revoked, or misdemeanors.)

2. The district clerk of the county in which you were convicted will make this form available to you, on request, without charge.

3. You must file the entire writ application form, including those sections that do not apply to you. If any pages are missing from the form, or if the questions have been renumbered or omitted, your entire application may be dismissed as non-compliant.

4. You must make a separate application on a separate form for each judgment of conviction you seek relief from. Even if the judgments were entered in the same court on the same day, you must make a separate application for each one.

5. Answer every item that applies to you on the form. Do not attach any additional pages for any item.

6. You must include all grounds for relief on the application form as provided by the instructions under item 17. You must also briefly summarize the facts of your claim on the application form as provided by the instructions under item 17. Each ground shall begin on a new page, and the recitation of the facts supporting the ground shall be no longer than the two pages provided for the claim in the form.

7. Legal citations and arguments may be made in a separate memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not.

8. You must verify the application by signing either the Oath Before Notary Public or the Inmate's Declaration, which are at the end of this form on pages 11 and 12. You may be prosecuted and convicted for aggravated perjury if you make any false statement of a material fact in this application.

9. When the application is fully completed, mail the original to the district clerk of the county of conviction. Keep a copy of the application for your records.

10. You must notify the district clerk of the county of conviction of any change in address after you have filed your application.

Rev. 01/14/14

Case No. _____

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### APPLICATION FOR A WRIT OF HABEAS CORPUS
### SEEKING RELIEF FROM FINAL FELONY CONVICTION
### UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: Isaias L. Palacios

DATE OF BIRTH: 2/06/1974

PLACE OF CONFINEMENT: TDCJ-ID Wallace Unit

TDCJ-CID NUMBER: #1709341          SID NUMBER: Unknown

(1)  **This application concerns (check all that apply):**

☒  a conviction              □  parole

□  a sentence                □  mandatory supervision

□  time credit               □  out-of-time appeal or petition for
                                       discretionary review

(2)  **What district court entered the judgment of the conviction you want relief from?**
(Include the court number and county.)

142nd Judicial District, Midland County, Texas

(3)  **What was the case number in the trial court?**

CR-36,477 and CR-36,475

(4)  **What was the name of the trial judge?**

Honorable George D. "Jody" Gilles

**(5)** Were you represented by counsel? If yes, provide the attorney's name:

Jeffrey T. Robnett, Attorney At Law

**(6)** What was the date that the judgment was entered?

March 24, 2011

**(7)** For what offense were you convicted and what was the sentence?

Two Counts of Aggravated Assault, 20yrs.

**(8)** If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?

Aggravated Assault CR-36,477    20yrs.

Aggravated Assault CR-36,475    20yrs.

**(9)** What was the plea you entered? (Check one.)

☐ guilty-open plea          ☐ guilty-plea bargain
☒ not guilty               ☐ *nolo contendere*/no contest

If you entered different pleas to counts in a multi-count indictment, please explain:

N/A

**(10)** What kind of trial did you have?

☐ no jury                  ☐ jury for guilt and punishment
                           ☒ jury for guilt, judge for punishment

2

(11) Did you testify at trial? If yes, at what phase of the trial did you testify?

No

(12) Did you appeal from the judgment of conviction?

☒ yes          ☐ no

If you did appeal, answer the following questions:

(A) What court of appeals did you appeal to? Eleventh District of Texas
Eastland, Texas

(B) What was the case number? 11-11-00084-CR, 11-11-00085-CR, 11-11-00086-CR

(C) Were you represented by counsel on appeal? If yes, provide the attorney's name:

Mark H. Dettman, Attorney at Law

(D) What was the decision and the date of the decision? Affirmed April 11,2013

(13) Did you file a petition for discretionary review in the Court of Criminal Appeals?

☒ yes          ☐ no

If you did file a petition for discretionary review, answer the following questions:

(A) What was the case number? PD-0522-13

(B) What was the decision and the date of the decision? Refused August 21,2013

(14) Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

☒ yes          ☐ no

If you answered yes, answer the following questions:

(A) What was the Court of Criminal Appeals' writ number? N/A Still Pending

3

Rev. 01/14/14

**(B)  What was the decision and the date of the decision?** N/A Still Pending

**(C)  Please identify the reason that the current claims were not presented and could not have been presented on your previous application.**

There is no known practice of barring non-capital state writ applicant's from filing a supplemental application. As indicated above nothing in art. 11.07 resticts an applicant from filing a supplemental argument. Tex. Rules of Appellate procedures, Rule 73 applies to "postconviction applications for writ of habeas corpus" and does not address supplemental applications. Therefore, pursuant to T.C.C.P. art. 11.07 §3(c) petitioner moves this Honorable Court of Appeals to grant his mandamus because there is substantial controversy as material facts which will entitle petitioner to relief as a matter of law.

**(15)  Do you currently have any petition or appeal pending in any other state or federal court?**

☒ yes                                    ☐ no

**If you answered yes, please provide the name of the court and the case number:**

142nd Judicial District Midland, Texas

**(16)  If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)**

☐ yes                                    ☒ no

**If you answered yes, answer the following questions:**

**(A)  What date did you present the claim?** N/A

**(B)  Did you receive a decision and, if yes, what was the date of the decision?**

N/A

**If you answered no, please explain why you have not submitted your claim:**

4

_____

_____

_____

_____

_____

(17)   Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

5

**GROUND ONE:** Applicant's 5th and 14th Amendment Constitional Rights to the United States were Violated.

**FACTS SUPPORTING GROUND ONE:** The prosecution withheld exculpatory as well as impeachment evidence that was material to the applicant's defense theory, and therefore, violated applicant's 5th and 14th Amendment Rights to the United States Constitution.

(See Supplemental 11.07 Application with Brief In Support)

( Pages 1-9 )

6

Rev. 01/14/14

7

Rev. 01/14/14

**GROUND TWO:**

_____

_____

**FACTS SUPPORTING GROUND TWO:**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

8

Rev. 01/14/14

9

**GROUND THREE:**

_____

_____

**FACTS SUPPORTING GROUND THREE:**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

10

Rev. 01/14/14

11

**GROUND FOUR:**

_____

_____

**FACTS SUPPORTING GROUND FOUR:**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12

Rev. 01/14/14

13

**GROUND:**

_____

_____

**FACTS SUPPORTING GROUND:**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

14

Rev. 01/14/14

15

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

### OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF _____

_____, being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____, 20_____.

_____
Signature of Notary Public

16

Rev. 01/14/14

## PETITIONER'S INFORMATION

Petitioner's printed name: _Isaias L. Palacios #1709341_

State bar number, if applicable: _Pro-Se_

Address: _Wallace Unit_
_1675 South FM 3525_
_Colarado City, Tx. 79512_

Telephone: _N/A_

Fax: _N/A_

## INMATE'S DECLARATION

I, _Isaias L. Palacios_ , am the (applicant)/ petitioner (circle one) and

being presently incarcerated in _TDCJ-ID Wallace Unit_, declare under penalty of

perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on _December 9_, 20 _14_.

_Isaias L. Palacios_
Signature of Applicant / Petitioner (circle one)

17

Rev. 01/14/14

**PETITIONER'S INFORMATION**

Petitioner's printed name: _Isaias L. Palacios #1709341_

Address: _Wallace Unit_

_1675 South FM 3525_

_Colorado City, TX 79512_

Telephone: _N/A_

Fax: _N/A_

Signed on _December 9_, 20 _14_.

_Isaias L Palacios_
<span style="margin-left:3em;">Signature of Petitioner</span>

18

Rev. 01/14/14